**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE**

UNITED STATES OF AMERICA

v.

FAYSAL KALAYAF MANAHE,
YASER AALI,
AMMAR ALKINANI, and
QUASIM SAESAH

       Defendants.

No. 2:22-cr-00013-JAW

## UNITED STATES' TRIAL BRIEF

The Government submits this trial brief to summarize its anticipated evidence and address certain legal and evidentiary issues likely to arise during trial.

## I. STATUS OF THE CASE

This matter is scheduled for jury selection on March 6, 2023. Trial is scheduled to commence immediately afterward.

The Government expects to call 8 witnesses in its case-in-chief.

The Government expects to complete its case-in-chief in approximately 5 days.

## II. STATEMENT OF FACTS

The Indictment charges Defendants with committing a per se unlawful offense under 15 U.S.C. § 1 by conspiring to fix the wages of their employees and to not hire one another's employees. (ECF No. 1 ¶ 15.) The conspiracy was formed and implemented by Defendants, each of whom is an owner or manager of a home healthcare agency that employs Personal Support Specialist ("PSS") workers in the Portland, Maine area. (*Id.* ¶¶ 5-8, 12, 15-16.)

1

The goal of Defendants' conspiracy was simple: to eliminate competition for PSS workers. (*Id.* ¶15.) Defendants sought to accomplish this goal by conspiring (1) to fix the hourly rates their agencies paid these workers and (2) by agreeing not to hire each other's PSS workers. (*Id.* ¶16.) For example, between April 7 and April 9, 2020, Defendants sent text messages to one another explicitly describing the wage-fixing part of their conspiracy:

- Saesah: "Brothers, everyone has agreed that the rate is from 15-16"
- Aali: "[W]e have agreed on 15 and 16 and I started announcing it."
- Alkinani: "I am committed and told the employees 15-16"
- Kalayaf: "Yes, this is the agreement [. . .] I am still going with 15 and 16."

(*Id.* ¶17(d).)[1] Defendants also "engaged in discussions regarding . . . refraining from hiring each other's PSS workers." (*Id.* ¶17(b).)

To further their conspiracy, Defendants executed a two-prong strategy. First, Defendants agreed to pressure competing employers to retract their own wage increases. (*Id.* ¶17(e).) For example, on April 6, 2020, Defendant Aali called the owner of a competing PSS agency, asked him to retract his PSS wage increase, and threatened to submit unrelated and baseless complaints to the regulating state agency about him if he did not comply. (*Id.*) The owner of that agency, Mustafa Kadhim,[2] refused to comply. In response, between April 7 and 13, 2020, Defendants Alkinani and Saesah, and Individual 1, on behalf of Defendant Kalayaf's agency, contacted the state to urge an investigation of Mr. Kadhim's agency, Good Hands Home Health Care LLC ("Good Hands").[3] (*Id.*)

---

[1] The translations included in the Indictment were preliminary. The Government subsequently obtained certified translations that were substantively similar, although not identical, to the communications alleged in the Indictment.

[2] Identified as "Individual 3" in the Indictment.

[3] Identified as "Company E" in the Indictment.

Second, Defendants attempted to recruit additional competing PSS agencies to join the conspiracy. (*Id.* ¶ 17(f)-(g).) For example, on April 26, 2020, weeks after Defendants formed the conspiracy, they invited competitor PSS agencies to join the conspiracy and proposed several terms to those agencies. (*Id.*)

## III.    LAW APPLICABLE TO SHERMAN ACT OFFENSES

As the Court held in its order denying Defendants' motion to dismiss, "the question for the jury at trial will be whether a per se unlawful agreement to fix wages and allocate workers was formed." (ECF No. 112 at 21.) To prove a per se violation of Section 1 of the Sherman Act, the Government must establish the following elements beyond a reasonable doubt:

(1) A conspiracy existed between two or more competitors to allocate PSS workers or to fix their wages;

(2) Defendants knowingly joined the conspiracy; and

(3) The conspiracy involved interstate trade or commerce.

(*See* ECF No. 112 at 22); 15 U.S.C. § 1; *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 219-20, 223 (1940); *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 246 (1980); *United States v. Rose*, 449 F.3d 627, 630 (5th Cir. 2006).

Because the Indictment alleges facts constituting a per se violation, the Government need not establish that Defendants' conduct had anticompetitive effects or caused harm in any market. *See Socony-Vacuum*, 310 U.S. at 224 n.59, 252; *United States v. Jindal*, No. 4:20-CR-00358, 2021 WL 5578687, at *6 (E.D. Tex. Nov. 29, 2021) ("[F]ixing the price of labor, or wage fixing, is a form of price fixing."). Nor is the Government "required to prove that the defendant[s] knew [their] actions were illegal or that [they] specifically intended to restrain trade or violate the law." *United States v. All Star Indus.*, 962 F.2d 465, 474 n.18 (5th Cir. 1992); *see also United States v.*

3

*Nippon Paper Indus. Co., Ltd.*, 109 F.3d 1, 7 (1st Cir. 1997) ("[D]efendants can be convicted of participation in price-fixing conspiracies without any demonstration of a specific criminal intent to violate the antitrust laws."). Instead, the Government need only show that Defendants "knowingly joined or participated in the conspiracy." *United States v. Young Bros.*, 728 F.2d 682, 687 (5th Cir. 1984).

## IV. EVIDENTIARY ISSUES

### A. Statements of Defendants, Co-Conspirators, and Agents Are Admissible as Non-Hearsay

The Government intends to offer into evidence out-of-court statements by Defendants, their co-conspirators, and their agents. These statements include text messages and email communications. Any statement made by one of the defendants or his agent(s) is admissible non-hearsay against that defendant as an opposing party's statement. Fed. R. Evid. 801(d)(2)(A), (D).

In addition, statements made by Defendants and their coconspirators "during and in furtherance of the conspiracy" are admissible non-hearsay against all defendants. Fed. R. Evid. 801(d)(2)(E); *United States v. Ford*, 839 F.3d 94, 105 (1st Cir. 2016). Before instructing that the jury may consider these co-conspirator statements for the truth of the matter asserted against the non-declarant defendant, the Government must prove, by a preponderance of the evidence, that: (1) a conspiracy existed; (2) the declarant and the defendant were members of the conspiracy; and (3) the statement was made during the course and in furtherance of the conspiracy. *United States v. Rosario-Perez*, 957 F.3d 277, 298 (1st Cir. 2020); *United States v. Ciresi*, 697 F.3d 19, 25 (1st Cir. 2012). Further, a coconspirator statement "need not be necessary or even important to the conspiracy, or even made to a coconspirator, as long as it can be said to advance the goals

of the conspiracy in some way." *United States v. Piper*, 298 F.3d 47, 54 (1st Cir. 2002) (citation omitted). "A court's determination as to whether this burden has been met is known in this circuit as a *Petrozziello* ruling." *United States v. Mitchell*, 596 F.3d 18, 23 (1st Cir. 2010); *see United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir. 1977).

The Court need not make a *Petrozziello* ruling at a distinct hearing or prior to any statement's admission under the co-conspirator exclusion from the hearsay rule. *Ciresi*, 697 F.3d at 25. The trial court has wide discretion as to the order of proof, and, as this Court has recognized, the Court may admit the statement in the normal course of trial, subject to later proof of the conspiracy. (ECF No. 112 at 30 (citing *United States v. Paz-Alvarez*, 799 F.3d 12, 29 (1st Cir. 2015))); *see also United States v. Lara*, 970 F.3d 68, 77 (1st Cir. 2020) (provisional admission of testimony was in accordance with First Circuit practice); *United States v. Melo*, 954 F.3d 334, 344 (1st Cir. 2020) (same). While a court may consider the contents of the statement at issue, the Government must also introduce some evidence beyond the proffered coconspirator statement itself to "delineate the conspiracy and corroborate the declarant's and the defendant's roles in it." *United States v. Piper*, 298 F.3d 47, 52 (1st Cir. 2002); *United States v. Portela*, 167 F.3d 687, 703 (1st Cir. 1999). Such evidence can include testimony of other witnesses, recordings, phone records, and other types of evidence routinely marshalled at trial. *See Mitchell*, 596 F.3d at 23-24.

Statements made in furtherance of a conspiracy encompass a broad range of statements made during a conspiracy by its participants. This includes boasts or puffery, attempts at concealment and avoiding detection, or statements identifying a conspirator's role in the conspiracy. *See, e.g.*, *United States v. Aviles-Colon*, 536 F.3d 1, 15 (1st Cir. 2008) ("Our precedent clearly establishes that informing co-conspirators of the activities of the conspiracy's

members furthers the conspiracy."); *United States v. Colon-Diaz*, 521 F.3d 29, 37 (1st Cir. 2008) (finding that statements of puffery were made in furtherance of conspiracy); *United States v. Howard*, 770 F.2d 57, 60-61 (6th Cir. 1985) (ruling that attempts at concealment and avoiding detection furthered the conspiracy). This also includes statements directly implementing or enforcing the conspiracy. *See, e.g.*, *United States v. Perez-Vasquez*, 6 F.4th 180, 196 (1st Cir. 2021) (holding that coconspirator statements included updates about "enforcement of the rules and general state of affairs," as those statements "further[ed] the interests of the gang").

The Government has identified approximately one thousand coconspirator statements, in the form of text message communications, that it will seek to admit during the course of the trial. In addition, the Government expects that at least three of its witnesses may testify about statements made to them, or in their presence, by coconspirators in furtherance of the conspiracy. The Government will follow any procedure regarding the admissibility of these statements that the Court deems appropriate.

**B.     Many of the Words of Defendants, Co-Conspirators, and Agents Are Otherwise Admissible as Non-Hearsay**

Other out-of-court words of Defendants, their co-conspirators, and their agents will be admissible as non-hearsay for additional reasons under Federal Rule of Evidence 801(a) and (c), including for the following reasons: (1) words that are not "statements," because they are not "assertions" or were not "intended as an assertion," Fed. R. Evid. 801(a); and (2) statements not introduced "to prove the truth of the matter asserted," Fed. R. Evid. 801(c)(2).

**C.     Self-Authenticating Records, Including Public Records and Electronic Search Warrant Returns, Are Admissible**

The Government will introduce self-authenticating evidence under Federal Rule of Evidence 902. This evidence will include public records, admissible under Fed. R. Evid. 902(1),

(2), (4), and certified records, admissible under Rule 902(11), (13), or (14). *See, e.g.*, *United States v. Burgos-Montes*, 786 F.3d 92, 119 (1st Cir. 2015) (cell phone records were properly introduced when "accompanied by a certification of the custody of [such] records in compliance with Fed. R. Evid. 803(6)(D) and 902(11)"); *United States v. Gordon*, No. 1:19-CR-00007-JAW, 2019 WL 4303046, at *10 (D. Me. Sept. 11, 2019).

The Government also intends to introduce copies of certain text messages that were obtained after search warrants were executed on cellular phones. These records are self-authenticating under Rules 902(13) and (14) as it relates to the copying and processing of the records, obviating the need for analysts to testify about how they processed such electronic data.[4] The Government will introduce certifications that comply with the authentication requirements in Rules 902(13) and (14) and describe the forensic tools and processing software used to copy and process data from electronic devices. *See, e.g., United States v. Anderson*, 563 F. Supp. 3d 691, 695-96 (E.D. Mich. 2021) (seized text messages authentic under Rule 902(14)); *United States v. Adams*, No. 15-cr-00580-JLS, 2019 U.S. Dist. LEXIS 9558, at *35-41 (E.D. Pa. Jan. 16, 2019) (court properly admitted text-message records copied from a seized mobile phone that were authenticated based on a Rule 902(13) certificate describing the declarant's extraction and copying of data from the phone). To date, Defendants have not raised any question about the authenticity of the documents and data files produced from these electronic devices.

---

[4] Rule 902(14) provides that "[d]ata copied from an electronic device, storage medium or file," is self-authenticating "if authenticated by a process of digital identification, as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12)" and the proponent complies with the notice requirements of Rule 902(11). Rule 902(13) provides that "record[s] generated by an electronic process or system that produces an accurate result" are self-authenticating "as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12)" and the proponent meets the notice requirements of Rule 902(11).

This self-authenticating evidence is admissible under Federal Rules of Evidence 801, 802, and 803 for the reasons set forth above (as non-hearsay, party admissions, coconspirator statements, or another hearsay exception under Rule 801(d)(2) and 803). These records certified under Rule 902(11) consist of records that were regularly made in the course of business. Fed. R. Evid. 803(6). Defendants' state licensing records further fall under the hearsay exception for public records. Fed. R. Evid. 803(8).

**D. Business Records of Maine Medicare and Others Are Admissible**

The Government will offer business records from various entities, including from the Maine Department of Health and Human Services ("Maine Care"), cell phone network providers, financial institutions, Community Home Health Care, LLC, and other home health care agencies. These records are covered by certificates of authenticity from records custodians that meet the requirements of 902(11) and 803(6), and are properly admissible based on their certifications alone. *FTC v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 16-17 (1st Cir. 2010) (affirming admission of business records under Rule 803(6) based on a Rule 902(11) certificate). Further, records created by third parties and integrated into another entity's business records are admissible as the business record of the custodian entity if the custodian entity relied on the accuracy of the third-party record and the other requirements of Rule 803(6) are satisfied. *See United States v. McGill*, 953 F.2d 10, 14-15 (1st Cir. 1992) (because trustworthiness was established and foundation was adequately provided "by a sufficiently knowledgeable witness," bank deposit tickets containing taxpayer identification numbers transposed by bank employees from the deposit envelopes were properly admitted as business records); *United States v. Moore*, 923 F.2d 910, 914-15 (1st Cir. 1991) (ruling that bank records initially compiled by a third party were properly admitted as the bank's business records).

### E. The Government Plans to Introduce Certified Translations Through a Translator Witness

The Government plans to introduce certified English translations of Arabic documents as accurate translations at trial, after laying the proper foundation through a translator.[5]  In the interest of resolving any issues relating to the translations before trial, the Government supplied Defendants' counsel with copies of the translator's translations of the text messages on a rolling basis throughout early 2022, with the bulk of the production made in March 2022. *See United States v. Morales-Madera*, 352 F.3d 1, 8 (1st Cir. 2003) ("Sound trial management and considerations of fairness caution that the Government provide [copies of translations] to defense counsel adequately in advance, so that disputes . . . may be brought to the attention of the district court.").  The Government has, on several occasions, asked Defendants to stipulate to the accuracy of the translations.  Defendants have refused, citing general disagreement with the translations based on discussions with their clients.  To date, Defendants have not offered alternate translations or pointed to specific words, examples, or messages that they believe are incorrectly translated.

Given Defendants' generalized disputes as to the translations, and because agreement as to those translations does not seem possible, the Government intends to call a translator at trial to lay the appropriate foundation. *Id.* at 8 (when a translation is in dispute, "[i]f agreement is not possible, the district court should have the parties present testimony from translators and allow the jury to decide the issue").  In the interest of judicial economy, the Government requests that the Court order Defendants to make specific objections to the Government's certified translations

---

[5] The Government will serve Defendants with written notice of its intent to certify the translator as an expert witness, in an abundance of caution if that procedure is deemed appropriate by the Court.

before trial or identify a competing translator they intend to call at trial.  Failing a specific objection from Defendants or indication they will offer competing translations, the Government will request that the Court admit its certified translations as accurate and admissible after laying the proper foundation at trial.

## F.    The Government's Summary Charts Are Admissible to Prove Contents of Voluminous Evidence

The Government has moved for the admission of a summary chart as substantive evidence under Federal Rule of Evidence 1006 to assist the jury in understanding the evidence contained in certain voluminous records.  (ECF No. 165.)

## G.    Audio Tapes of the Conspirators Are Admissible

The Government will seek to admit two audio recordings made by a civilian witness who attended, and recorded, two meetings of Defendants and their coconspirators.[6]  These meetings were held to further the conspiracy and to convince that civilian witness to join the wage-fixing and no-hire agreement.  "The government has the duty of laying a foundation that the tape recordings accurately reproduce the conversations that took place, *i.e.*, that they are accurate, authentic, and trustworthy.  Once this is done, the party challenging the recordings bears the burden of showing that they are inaccurate."  *United States v. Carbone*, 798 F.2d 21, 24 (1st Cir. 1986); *see also Corbett v. United States*, No. 2:15-CR-00031-GZS, 2020 WL 7028967, at *6-7 (D. Me. Nov. 30, 2020).

Here, the meetings were recorded by a civilian witness, with no government involvement.  The recordings reflect the entirety of each meeting, with no pauses or gaps.[7]  The recordings

---

[6] The audio recordings are of meetings that were conducted in English and require no translation.

[7] Even if portions of the meetings were not recorded, this would not necessarily render the recordings inadmissible.  *See, e.g.*, *United States v. Brassard*, 212 F.3d 54, 57 (1st Cir. 2000)

contain multiple admissions by Defendants and statements by their coconspirators. Importantly, these admissions and statements "were wholly voluntary, and not the product of any government coercion or duress." *United States v. Cruz Jimenez*, 894 F.2d 1, 9 (1st Cir. 1990). After laying the proper foundation at trial, these recordings will thus be admissible and the Government will publish certain portions for the jury. *See, e.g.*, *United States v. Murdock*, 699 F.3d 665, 670-71 (1st Cir. 2012) (content of audio recording was sufficient to corroborate identity of speaker and establish authenticity of recording); *United States v. Font-Ramirez*, 944 F.2d 42, 47 (1st Cir. 1991) (recordings made by one party to conversation were admissible regardless of cumulative effect of such admission).

## H. Demonstrative Exhibits Will Serve as Aids to the Jury to Help Explain Facts Disclosed by the Evidence

The Government plans to present demonstrative exhibits to aid in its presentation of its case. These aids may identify the key players in Defendants' conspiracy, and depict the timing of key events in Defendants' conspiracies and concealment endeavors. The demonstratives will include excerpts of coconspirator statements, timelines of acts and communications during the conspiracy, and transcripts of audio recordings. "[A]llowing the use of charts as 'pedagogical' devices intended to present the government's version of the case is within the bounds of the trial court's discretion to control the presentation of evidence under [Federal Rule of Evidence] 611(a)." *United States v. Harms*, 442 F.3d 367, 375 (5th Cir. 2006) (quoting *United States v. Taylor*, 210 F.3d 311, 315 (5th Cir. 2000)). These charts are not admitted into evidence but

---

("While the initial moments of one of the tapes were destroyed, that did not make that tape inadmissible.").

serve as aids to help explain the facts disclosed by the evidence. *Harms*, 442 F.3d at 375; *see also United States v. Milkiewicz*, 470 F.3d 390, 397 (1st Cir. 2006).

As noted above, the Government will also seek to admit several audio recordings of meetings between Defendants and their coconspirators in furtherance of the conspiracy. Assuming that the proper foundation is laid and that the audio recordings are admitted into evidence, the jury should be permitted to view a printed transcript to aid its understanding of the spoken words as the recordings are played. The First Circuit has "long approved the use of properly authenticated transcripts of tape recordings for the purpose of helping the jury listen to and understand the recordings themselves." *United States v. Young*, 105 F.3d 1, 10 (1st Cir. 1997).

The Government has requested a Proposed Jury Instruction to be given the jury before the recording is played, as well as prior to the jury's deliberations, informing the jury that the transcript is a guide and that, if the jury hears something different from what has been transcribed, the jury's recollection will be controlling. (*See* ECF No. 150 at 2 (requesting Court's instruction on Use of Tapes and Transcripts)).

## I. Defendants Should Be Precluded from the Improper Use of Law Enforcement Agents' Interview Summaries or Reports

As part of discovery, the Government has produced multiple FBI FD-302 Forms ("302s"). These documents reflect an agent's notes pertaining to a meeting, interview or conversation with a witness. The 302s are inadmissible hearsay. Fed. R. Evid. 801, 802. They do not qualify as admissible prior inconsistent statements under Rule 801(d)(1)(A) because they have not been "sworn" to by the relevant witnesses, and no other exception to the rule against

hearsay applies. Accordingly, Defendants may not offer a 302 for the truth of any matter asserted therein.

Nor may Defendants introduce a 302 as extrinsic evidence of a prior inconsistent statement under Rule 613(b). A third party's notes of a witnesses statement may only be admitted as a prior inconsistent statement if the notes have been "endorse[d] by the witness" or "they are a verbatim transcript of the witness's own words." *United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992); *see United States v. Foley*, 871 F.2d 235, 239 (1st Cir. 1989) (law enforcement reports were inadmissible because it was "plain that the 302s [were] not substantially verbatim recitals of oral statements"); *United States v. Maldonado-Peña*, 4 F.4th 1, 28 (1st Cir. 2021) (when witness did not approve or adopt agent's rough notes, those notes were not statements); *United States v. Marrero-Ortiz*, 160 F.3d 768, 776 (1st Cir. 1998) ("A written summary of a witness interview is not a statement unless the evidence shows that the witness adopted the notes."). *See generally Palermo v. United States*, 360 U.S. 343, 350 (1959) (explaining that it would be "grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations"). Here, the 302s are not "verbatim transcripts" and have not been endorsed by any witness. Thus, the 302s are irrelevant and inadmissible as impeach prior inconsistent statements. *See Almonte*, 956 at 29.

Because statements contained in 302s are hearsay without requisite indicia of reliability, counsel cannot introduce a 302 statement into evidence for a non-impeachment purpose in any circumstance. Thus, there are few permissible uses for 302s at trial. A 302 may be used to refresh a witness's recollection. However, Defendants are not permitted to use refreshing a witness' recollection as a pretext to impeach the witness with such a report, quote language from

the 302, suggest the statements are in a written document, display the 302 to the jury, or otherwise attempt to mislead the jury into thinking that the 302 is a written statement of the witness.[8]  *See United States v. Harris*, No. CR-17-01, 2018 WL 1990520, at *1 (D. Haw. Apr. 25, 2018) ("Refreshing of recollection as subterfuge for suggestion or impeachment is not allowed." (citing *United States v. Ragghianti*, 560 F.2d 1376, 1380-81 (9th Cir. 1977))); *Rush v. Ill. Cent. R.R. Co.*, 399 F.3d 705, 718 (6th Cir. 2005) (finding it improper for defense counsel to attempt to refresh the witness during cross examination by "incorporating into his question the otherwise inadmissible contents of the writing"); *United States v. Marks*, 816 F.2d 1207, 1210-11 (7th Cir. 1987) (district court appropriately barred defendants from reading aloud from interview reports when refreshing witnesses' recollections to avoid the misleading impression that the reports were "authoritative"); Fed. R. Evid. 103(d) ("To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means.").  Absent such precautions, defense counsel will be able to backdoor inadmissible evidence in violation of Federal Rules of Evidence 103(d), 401, and 801, and to mislead the jury in violation of Rule 403.

The Government thus requests that the Court order Defendants to refrain from such improper use of law enforcement summaries or reports at trial.

### J.  Defendants Should be Precluded from Improper Questioning or Argument About Charging Decisions

It would be improper for Defendants' counsel to question witnesses or offer argument impugning the exercise of prosecutorial discretion to prosecute Defendants and not other co-

---

[8] Moreover, before Defendants may attempt to use a 302 to refresh a witness' recollection, the witness must acknowledge that his or her memory is impaired.  *See United States v. Balthazard*, 360 F.3d 309, 310 (1st Cir. 2004).

conspirators. "[T]he defense of selective prosecution is a matter that is independent of a defendant's guilt or innocence, so it is not a matter for the jury." *United States v. Abboud*, 438 F.3d 554, 579 (6th Cir. 2006); *see also, e.g.*, *United States v. Garcia*, No. 18-CR-00466-BLF, 2021 WL 4594774, at *3 (N.D. Cal. Oct. 6, 2021) ("The Government's charging decisions are irrelevant to the charged conduct in this case, and introduction of such evidence would confuse and mislead the jury."); *United States v. Callahan*, No. 1:13-CR-339, 2014 WL 535690, at *2 (N.D. Ohio Feb. 7, 2014) (prohibiting any argument "that the charges in this case are more 'appropriate' for the state criminal justice system" as irrelevant, confusing, and misleading); *United States v. Fieger*, No. 07-CR-20414, 2008 WL 996401, at *2 (E.D. Mich. Apr. 8, 2008) ("How often a law is enforced is not relevant to Defendant['s] . . . knowing conduct, nor can it constitute any valid defense at trial.").

### K. Defendants' Use of Character Evidence Should Be Limited

In general, character evidence is not admissible. Fed. R. Evid. 404(a)(1). There are narrow exceptions to this general rule. *See* Fed. R. Evid. 404(a)(2)-(3), 405, 608. Two such exceptions might be at issue depending on what evidence, if any, Defendants choose to present at trial.

First, if a defendant chooses to testify, that would open the door for the Government to offer character evidence about that defendant's character for untruthfulness. *See* Fed. R. Evid. 404(a)(3), 608; *see also, United States v. Forero-Perdomo*, No. 90-1034, 1990 WL 152393, at *2 (1st Cir. Sept. 24, 1990) (defendant "put his credibility at issue when he took the stand, and the Government was entitled to inquire on cross-examination concerning prior instances of conduct probative on the issue of his veracity"). The Government could do so not only through specific cross-examination of the defendant, *see* Fed. R. Evid. 608(b)(1), but also through rebuttal

witness testimony that, based on reputation or opinion, the defendant has an untruthful character, *see* Fed. R. Evid. 608(a).

Second, if Defendants seeks to offer affirmative character evidence, such evidence must meet narrow requirements. To begin with, it must relate to a "*pertinent* trait" of the defendant. Fed. R. Evid. 404(a)(2)(A) (emphasis added). "The word 'pertinent' is read as synonymous with 'relevant,'" such that "the character trait in question would make any fact 'of consequence to the determination' of the case more or less probable than it would be without evidence of the trait." *United States v. Angelini*, 678 F.2d 380, 381 (1st Cir. 1982) (citations omitted); *United States v. Santana-Camacho*, 931 F.2d 966, 968 (1st Cir. 1991) (noting that "traits of character 'pertinent' to the crime charged must be relevant (citation omitted)); *see also Nóbrega v. United States*, Nos. 1:10-CR-00186-JAW, 1:15-cv-00134-JAW, 2018 WL 2100582, at *4 (D. Me. May 7, 2018).

If Defendants identify a trait that is pertinent, they may prove that trait only "by testimony about [their] reputation or by testimony in the form of an opinion." Fed. R. Evid. 405(a). Defendants may not elicit testimony about specific instances, so the direct examination of a defendant's character witness is necessarily short and limited. *See United States v. Colomb*, 419 F.3d 292, 301 (5th Cir. 2005) ("Character witnesses necessarily testify to a limited range of issues, and such testimony is often cumulative when presented by several witnesses." (citation omitted)); *see also United States v. Kinsella*, 545 F. Supp. 2d 158, 161 n.2 (D. Me. 2008) (providing a model three-question direct examination of a character witness). For example, no Defendant may "solicit testimony from his character witnesses regarding . . . specific interactions between the witness and defendant," regarding "defendant's religious or moral beliefs," or "defendant's charitableness." *United States v. Buncich*, No. 2:16 CR 161, 2017 WL 4785366, at *1 (N.D. Ind. Aug. 3, 2017) (collecting cases).

16

"The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him," affording the Government much latitude on cross-examination. *Michelson v. United States*, 335 U.S. 469, 479 (1948); *see* Fed. R. Evid. 405(a) (allowing "inquiry into relevant specific instances" on cross-examination); *United States v. Boldt*, 929 F.2d 35, 40 (1st Cir. 1991). For example, if Defendants offer general evidence of their community reputation, the Government may cross-examine about specific conduct, and charges, that are inconsistent with Defendants' affirmative character evidence. *United States v. Kinsella*, 545 F. Supp. 2d 158, 161 (D. Me. 2008) (if defense offers character evidence, "the Government may inquire about specific instances of bad conduct" during cross-examination). In addition to cross-examination, the Government may also call rebuttal witnesses to testify to Defendants' characters and reputations for dishonesty or unscrupulous business conduct. *See e.g.*, *United States v. Roper*, 135 F.3d 430, 433 (6th Cir. 1998) (defendant "'opened the door' for the government to discredit his character . . . by introducing extrinsic, substantive, rebuttal evidence").

## L. Defendants Should be Precluded from Introducing Improper Arguments Regarding Jury Nullification, the Legitimacy of Wage-Fixing and No-Poach Agreements, Opposing Counsel, or the Consequences of Conviction

Defendants' briefing indicates that they may seek to present certain categories of improper evidence and argument. The Government asks the Court to exclude the following four categories of improper evidence and arguments.

First, it would be improper for Defendants to offer evidence or argument they were acting in good faith because Maine Care sanctioned or encouraged their conduct. Good faith is a defense only to specific-intent crimes, such as fraud. *See, e.g.*, *United States v. Mueffelman*, 470

F.3d 33, 36 (1st Cir. 2006) (explaining that "good faith" negates the "specific intent" required for fraud). By contrast, a defendant need not act with specific intent to violate the Sherman Act. *See Nippon Paper* 109 F.3d at 7; *All Star Indus.*, 962 F.2d at 474 n.18. Accordingly, it is irrelevant whether the Defendants were acting in good faith or believed that their conduct was lawful.

Second, it would be improper for Defendants to invite jury nullification. As the First Circuit has observed, "although jurors possess the raw power to set an accused free for any reason or for no reason, their duty is to apply the law as given to them by the court." *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993). "Neither the court nor counsel should encourage jurors to exercise their power to nullify." *United States v. Bunchan*, 626 F.3d 29, 34 (1st Cir. 2010); *Sepulveda*, 15 F.3d at 1190; *United States v. DesMarais*, 938 F.2d 347, 350 (1st Cir. 1991) ("[I]t would have been improper to urge the jury to nullify applicable law."). Defendants should therefore be precluded from introducing evidence or arguments relating to their personal characteristics, such as their age, health, family circumstances, financial means, philanthropy, or community involvement. These issues have no bearing on whether Defendants knowingly participated in an agreement to fix prices in violation of Section 1 of the Sherman Act—the only question for the jury to decide.

Third, and as the Government has noted in its Motions in Limine (ECF Nos. 155, 156), Defendants should not present evidence or argument attempting to justify their wage-fixing and no-hire agreement as somehow non-criminal. As this Court has held, the conduct charged in the Indictment is categorically a federal crime. (ECF No. 112 at 22.) Fixing the wages of PSS workers and allocating the market for such workers constitutes a per se violation of the Sherman Act. *See United States v. Patel*, No. 3:21-cr-220 (VAB), 2022 WL 17404509, at *11, 21 (D.

Conn. Dec. 2, 2022); *United States v. DaVita Inc.*, No: 1:21-cr-00229-RBJ, 2022 WL 266759 at *8 (D. Colo. Jan. 28, 2022) ("[I]f naked non-solicitation agreements or no-hire agreements allocate the market, they are per se unreasonable."); *see also Jindal*, 2021 WL 5578687, at *7 ("[P]rice-fixing agreements—even among buyers in the labor market—have been per se illegal for years."). To argue otherwise in direct contradiction to the law would be improper.

Fourth, it would be improper to comment on the effects a conviction might have on Defendants. That is because "[i]nformation regarding the consequences of a verdict is . . . irrelevant to the jury's task. Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Shannon v. United States*, 512 U.S. 573, 579 (1994). Therefore, for example, any argument that Defendants might face prison time or lose their business licenses would be improper. *See* ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases*, 4.D.8 (2009); *see also United States v. Cruz-Rivera*, 14 F.4th 32, 52 (1st Cir. 2021) (recognizing that testimony concerning sentencing was properly excluded as potentially confusing to jurors); *United States v. DiMarzo*, 80 F.3d 656, 660 (1st Cir. 1996) (noting that defendant's sentencing range was not proper for jury's consideration given that juries are finders of fact that "perform no sentencing function").

### M. The Government Requests Sequestration of Witnesses

The Government requests sequestration of witnesses under Federal Rule of Evidence 615. In accordance with Rule 615(b), however, the Government designates its FBI case agent, Special Agent Andrew Drewer, as its party representative. Accordingly, Special Agent Drewer is not excluded under the rule even though he may testify. *See United States v. Charles*, 456 F.3d 249, 257-58 (1st Cir. 2006); *United States v. Casas*, 356 F.3d 104, 126 (1st Cir. 2004) ("[E]ven when

defendants do request that a witness be sequestered pursuant to Fed. R. Evid. 615, government counsel is permitted 'to have an investigative agent at counsel table throughout the trial although the agent is or may be a witness.'" (citations omitted)).

## V.     RESERVATION OF RIGHTS

The Government reserves the right to supplement this brief as additional issues come to its attention.


Dated: February 24, 2023

                              Respectfully submitted,

                              */s/ Jena L. Tiernan*
                              JENA L. TIERNAN
                              Trial Attorney, New York Office
                              Antitrust Division
                              U.S. Department of Justice
                              26 Federal Plaza, Suite 3600
                              New York, NY 10278
                              Tel: 646-409-0450
                              Email: jena.tiernan@usdoj.gov

                              Nolan J. Mayther
                              Trial Attorney, San Francisco Office
                              Antitrust Division
                              U.S. Department of Justice

                              Philip D. Andriole
                              Trial Attorney, New York Office
                              Antitrust Division
                              U.S. Department of Justice

**CERTIFICATE OF SERVICE**

This is to certify that on February 24, 2023, the undersigned caused to be electronically filed the foregoing Government's Trial Brief with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

> */s/ Jena L. Tiernan*
> JENA L. TIERNAN
> Trial Attorney, New York Office
> U.S. Department of Justice
> Antitrust Division