UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:22-cr-00013-JAW |
| | ) | |
| FAYSAL KALAYAF MANAHE | ) | |
| YASER AALI | ) | |
| AMMAR ALKINANI, and | ) | |
| QUASIM SAESAH | ) | |
| Defendants. | ) | |

## ORDER ON THE GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE IRRELEVANT TO A PER SE CONSPIRACY

In anticipation of trial, the Government files a motion in limine to exclude any evidence or argument irrelevant to a per se case, including that: (1) there were pro-competitive or other justifications for the alleged conspiracy or that it had no harmful effect; (2) Defendants lacked specific intent, in that they were unaware that their actions were illegal; (3) Defendants were ignorant of the law; and (4) Defendants' conduct was common practice or "business as usual." The Government contends that these defenses should be precluded as irrelevant and unfairly prejudicial to the Government. The Court concludes that: (1) the reasonableness of the Defendants' conduct in this case is not relevant to the issues before the jury; (2) whether the Defendants acted in good faith is not relevant because a per se violation of § 1 of the Sherman Act is not a specific intent crime; (3) Defendants may not claim their ignorance of the law vitiates their potential criminal liability; and (4) the Defendants cannot—nor do they suggest that they should be allowed to—argue that their conduct is justified because others in their industry engage in similar practices. Because the

Government has elected to proceed on a pro se violation basis, the Government is just as bound as the Defendants to hew to evidence strictly relevant to its theory of the case.

## I.    BACKGROUND

### A.    Procedural Background

On January 27, 2022, a federal grand jury issued a one-count indictment, charging Faysal Kalayaf Manahe, Yaser Aali, Ammar Akinani, and Quasim Saesah with engaging in a criminal conspiracy in restraint of trade in violation of 15 U.S.C. § 1.  *Indictment* (ECF No. 1) (*Indictment*).  Trial is scheduled to commence on March 6, 2023 with jury selection on that day to be immediately followed by trial.  *Trial List* (ECF No. 151).  On January 23, 2023, the Government filed a motion in limine to exclude evidence irrelevant to a per se conspiracy (ECF No. 155) (*Gov't's Mot.*).  On February 13, 2023, the Defendants filed their response to the Government's motion in limine (ECF No. 160) (*Def.'s Opp'n*).

### B.    The Alleged Conspiracy: An Overview

The indictment in this case, consisting of nine pages, charges the Defendants and their respective home health agencies with engaging in a conspiracy to violate the Sherman Act, 15 U.S.C. § 1 by suppressing and eliminating competition for the services of Personal Support Specialist (PSS) workers by agreeing to fix the rates paid to PPS workers and by agreeing not to hire each other's workers.  *Indictment* ¶ 1-18. In addition, the indictment alleges that home health agencies were eligible to apply for and did receive loans from the Small Business Administration's (SBA) Paycheck

Protection Program (PPP). *Id.* ¶ 4. The PPP loans were forgivable so long as the loan recipients expended a certain percentage of the loans directly for payroll within a designated time and the indictment sets forth the managerial or ownership role the Defendants as well as other unnamed and unindicted individuals had in their respective home health agencies and the PPP loans each company (except the company affiliated with Quasim Saesah) received. *Id.* ¶¶ 5-14.

## II.   THE PARTIES' POSITIONS

### A.   The Government's Motion in Limine

The Government cites this Court's August 8, 2022 Order, *Order On Motions to Dismiss The Indictment And For a Preliminary Hearing Concerning Conspiracy Evidence* (ECF No. 112) (*Order*), to argue that pro-competitive justifications, lack of anticompetitive harm, and lack of implementation are irrelevant because "[h]ere, 'Defendants' criminal liability centers on whether an illegal agreement exists, rather than on the agreement's purpose or effects.'" *Gov't's Mot.* at 2 (quoting *Order* at 22). The Government submits that "[a]ny evidence offered by the Defendants for the purpose of demonstrating procompetitive justifications or the lack of anticompetitive harm could be offered only to argue that the charged conspiracy was not an unreasonable restraint—an argument completely foreclosed by the per se rule." *Id.* at 2-3 (citing *Arizona v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332, 351 n.23 (1982); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 218 (1940)); *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 647–50 (1980); *N. Pac. Ry. v. United States*, 356 U.S. 1, 5 (1958); *United States v. Vega-Martinez*, 949 F.3d 43, 52 (1st Cir. 2020)).

The Government further submits that "[a]ny arguments that the agreement was not implemented—for example, that Personal Support Specialist ("PSS") workers' wages were not actually suppressed as a result of the conspiracy—are similarly irrelevant, *id.* at 3 (citing *Order* at 22), making this evidence "inadmissible under Federal Rule of Evidence 402." *Id.* The Government explains that "[b]ecause the Court has already ruled that the per se rule forbids such attempted justifications and lack-of-effects evidence, all of these arguments should be excluded." *Id.* The Government contends similarly that Defendants "should not be permitted to introduce evidence and argument that they acted with good intentions or did not intend anticompetitive results," *id.* at 3-4, because the Government "need not show that Defendants acted 'with the purpose of achieving anticompetitive effects or with the knowledge that such effects likely would result.'" *Id.* at 4 (quoting *United States v. Brown*, 936 F.2d 1042, 1046 (9th Cir. 1991) (internal citation omitted)).

The Government submits that "[i]t is also irrelevant whether Defendants and their co-conspirators were aware their conduct was illegal or intended to violate the law . . . [and] whether the charged conduct was common practice or 'business as usual.'" *Id.* (collecting cases). The Government concludes that "[e]vidence irrelevant to a per se case is further inadmissible under Federal Rule of Evidence 403 [and] presenting such irrelevant facts and arguments would risk confusing the issues and misleading the jury as to the proper inquiry in this per se Sherman Act case." *Id.* at 5.

## B.    The Defendants' Opposition

The Defendants submit that "[t]he Government's Motion in Limine is nothing more than a shotgun approach to exclude all evidence that the Government does not like" because "[t]he test is not prejudice, but rather unfair prejudice outweighed by probative value . . . [and] this evidence is highly relevant, it is not unfairly prejudicial, and it is admissible." *Def.'s Opp'n.* at 6-7.  The Defendants further submit that "[t]he Government's Motion[] appear[s] to envision a scripted play rather than a criminal trial" when in reality, a "criminal jury trial goes in the direction dictated by the actual evidence and testimony elicited before a jury," making it "difficult, if not impossible, for this Court to determine relevancy in a vacuum." *Id.* at 1.

The Defendants first supply background to the present prosecution, observing that the issue is more complex than the picture painted in the Government's motion because "clients follow the workers, and clients represent revenue to companies," and "[t]he practice of employers 'acquiring' clients by hiring specific PSS workers is 'frowned upon' by MaineCare, but state agencies do not take any action on this disfavored practice," and the practice is rampant in the community.  *Id.* at 2. According to the Defendants, "[i]n this present case, and in the context of this heavily regulated business, an employer began to steal clients by promising wages that would not allow the employer to cover overhead costs based on the reimbursement rates," meaning that "the employer promised higher wages so that employees would bring the clients to his company."  *Id.* at 3.  The Defendants contend that "[i]n an attempt to resolve this dispute over the stealing of clients . . . various companies . . . sat down

to discuss resolution . . . were unsuccessful, as the unsigned agreement attests . . . [and f]rom this unsigned agreement, the present prosecution arose." *Id.* at 4.

The Defendants submit that "[e]ven if the mere allegation in an indictment is sufficient to trigger application of the per se rule, the lack of affirmative acts by the Defendants and alleged conspirators is highly probative as to whether a contract, combination, or conspiracy actually existed or was actually joined by any Defendant." *Id.* at 4-5. The Defendants further submit that the "best evidence of any Defendant's intent to form or enter into a contract, combination or conspiracy is his conduct in the alleged formation of any agreement and actions after the alleged formation of any agreement." *Id.* at 5. The Defendants assert that "all of this evidence is highly relevant [to] whether the Government has proven beyond a reasonable doubt" the essential elements of the crime:

> *First:* That a contract, combination or conspiracy actually existed to suppress and eliminate competition for the services of PSS workers by agreeing to fix the rates paid to PSS workers and by agreeing not to hire other's PSS workers as early as April 2020 and continued until as late as May 2020.
>
> *Second:* That each Defendant knowingly—that is voluntarily and intentionally—became a member of the charged contract, combination or conspiracy to suppress and eliminate competition for the services of PSS workers by agreeing to fix the rates paid to PSS workers and by agreeing not to hire other's PSS workers.

*Id.*

Finally, the Defendants contend that the "Government ignores its own primer on anti-trust law, which notes that an attempt or solicitation . . . are not violations of the Sherman Act" and "the fact that a mere hope to form a conspiracy, statements

6

that a party never intended to honor, or mere wishful thinking is not enough." *Id.* at 6.

## III.   LEGAL STANDARDS

### A.   A Rule 104 Pretrial Ruling

Rule 104(a) states, "[t]he court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible.  In so deciding, the court is not bound by evidence rules, except those on privilege." FED. R. EVID. 104(a).  Under Rule 104(a), the Court acts as a gatekeeper, *United States v. Poulin*, 592 F. Supp. 2d 132, 136 (D. Me. 2008), as it determines "whether foundational facts have been established (and, thus, whether particular pieces of evidence are eligible for admission)." *Blake v. Pellegrino*, 329 F.3d 43, 48 (1st Cir. 2003).  Foundational facts are those facts which dictate whether evidence is admissible, including "the genuineness of a document or statement, the maker's personal knowledge, and the like." *Id.*  The proponent must establish these foundational facts by a preponderance. *United States v. Campbell*, 268 F.3d 1, 4 (1st Cir. 2001) (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)).

Rule 104(b) states, "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later." FED. R. EVID. 104(b).  Unlike in Rule 104(a), "[i]n determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has

proved the conditional fact by a preponderance of the evidence." *Huddleston v. United States*, 485 U.S. 681, 690 (1988)).  Rather, "[t]he court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence." *Id.*

"Authentication is . . . treated as a matter of 'conditional relevancy' governed by Rule 104(b).  The question of authenticity is ultimately one for the jury, and the court must determine only whether the jury could reasonably find the proffered evidence authentic." *United States v. Rosado-Cancel*, Crim. No. 13-0731(DRD), 2015 U.S. Dist. LEXIS 57747, 2015 WL 1968598, at *6 (D.P.R. May 1, 2015).

**B.    Relevance and Unfair Prejudice**

A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal rules.  Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . .." *United States v. Abel*, 469 U.S. 45, 54 (1984).  Federal Rule of Evidence 401 states that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  FED. R. EVID. 401.  "Relevancy is a very low threshold." *United States v. Cruz-Ramos*, 987 F.3d 27, 42 (1st Cir. 2021).  "'[T]he evidence need not definitively resolve a key issue in the case,' but rather 'need only move the inquiry forward to some degree.'" *Id.* (citing *Bielunas v. F/V Misty Dawn, Inc.*, 621 F.3d 72, 76 (1st Cir. 2010)).  In the First Circuit's words, "it is no exaggeration to say that '[a] relevancy-based argument is

usually a tough sell.'" *Id.* (citing *Bielunas*, 621 F.3d at 76) (alterations in *Cruz-Ramos*).

Relevant evidence is generally admissible, while "[i]rrelevant evidence is not admissible." FED. R. EVID. 402.  However, "[t]he Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

## IV.  DISCUSSION

### A.    The Sherman Act and Per Se Violations: An Overview

In its order on the motion to dismiss dated August 8, 2022, the Court discussed the standards applied to criminal prosecutions under § 1 of the Sherman Act.  *Order on Mots. to Dismiss the Indictment and for a Prelim. Hr'g Concerning Conspiracy Evid.* at 11-12 (ECF No. 112).  Section 1 of the Sherman Antitrust Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade."  *White v. R.M. Packer Co.*, 635 F.3d 571, 575 (1st Cir. 2011) (quoting 15 U.S.C. § 1).

To set the stage, the Court turns to the 2018 opinion of the United States Supreme Court in *Ohio v. American Express Company*, 138 S. Ct. 2274 (2018).  In *American Express*, the Supreme Court described two ways a restraint of trade can be found to be unreasonable under § 1 of the Sherman Act:

> Restraints can be unreasonable in one of two ways.  A small group of restraints are unreasonable *per se* because they always or almost always tend to restrict competition and decrease output.  138 S. Ct. at 2283 (quoting *Business Electronics Corp. v. Sharp Electronics Corp.*, 485 U.S.

717, 723 (1988)). Typically only "horizontal" restraints—restraints "imposed by agreement between competitors"—qualify as unreasonable *per se.* 138 S. Ct. at 2283-84 (quoting *Business Electronics*, 485 U.S. at 730).

138 S. Ct. at 2283-84. Per se restraints are unreasonable because "the conduct at issue is 'manifestly anticompetitive' and 'always or almost always tend[s] to restrict competition and decrease output.'" *United States v. Jindal*, No. 4:20-cr-00358, 2021 U.S. Dist. LEXIS 227474, at *7 (E.D. Tex. Nov. 29, 2021) (quoting *Business Electronics*, 485 U.S. at 723). "*Per se* treatment is reserved for 'only those agreements that are so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality.'" *Id.* (quoting *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006)).

The Supreme Court and the First Circuit have described some situations where there is a per se violation. In 1911, the Supreme Court set down the per se rule as applying to situations where "considering the contracts or agreements, their necessary effect and the character of the parties by whom they were made, they were clearly restraints of trade within the purview of the statute" and "they could not be taken out of that category by indulging in general reasoning as to the expediency or non-expediency of having made the contracts or the wisdom or want of wisdom of the statute which prohibited their being made." *Standard Oil Co. v. United States*, 221 U.S. 1, 65 (1911). In 2011, addressing price fixing, the First Circuit wrote that "[i]n general, practices challenged under the Sherman Act are struck down only if they are unreasonable and anticompetitive, but agreements to fix prices are 'so plainly anticompetitive' that they are per se illegal." *White*, 635 F.3d at 575 (quoting *Texaco*

10

*Inc. v. Dagher*, 547 U.S. 1, 5 (2006) (quoting *Nat'l Soc'y of Prf'l Eng'rs v. United States*, 435 U.S. 679, 692 (1978)).

In *American Express*, the Supreme Court distinguished between horizontal and vertical restraints. As just noted, a horizontal restraint is one "imposed by agreement between competitors." *American Express*, 138 S. Ct. at 2283. By contrast, a vertical restraint is a restraint "imposed by agreement between firms at different levels of distribution." *Id.* 2284 (quoting *Business Electronics*, 485 U.S. at 730). In vertical restraint situations, the so-called "rule of reason" applies, and courts are required "to conduct a fact-specific assessment of 'market power and market structure . . . to assess the [restraint]'s actual effect' on competition." *Id.* (quoting *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984)).

Here, the Government alleges that the Defendants entered into agreements to fix wages and allocate workers. *Indictment* at 4-5 ("[T]he Defendants . . . entered into and engaged in a combination and conspiracy to suppress and eliminate competition for the services of PSS (Personal Support Specialist) workers by agreeing to fix the rates paid to PSS workers and by agreeing not to hire each other's PSS workers"). In *United States v. Jindal*, the district court in the Eastern District of Texas extensively discussed whether a horizontal agreement to fix the price of labor constitutes price fixing with the scope of the Sherman Act and concluded that it did. 2021 U.S. Dist. LEXIS 227474, at *10-21. In the absence of any direct First Circuit authority, the Court finds the *Jindal* court's opinion persuasive. *Id.* at *21 ("[P]rice-fixing agreements—even among buyers in the labor market—have been *per se* illegal for

11

years"); *see United States v. Patel*, No. 3:21-cr-220 (VAB), 2022 U.S. Dist. LEXIS 217330, at *31 (D. Conn. Dec. 2, 2022) (A no-poach agreement, "as alleged, operates as 'an agreement between competitors at the same level of the market structure to allocate' the labor market 'in order to minimize competition'") (quoting *United States v. Topco Assocs.*, 405 U.S. 596, 608 (1972)); *United States v. DaVita*, No. 1:21-cr-00229-RBJ, 2022 U.S. Dist. LEXIS 16188, at *23-24 (D. Colo. Jan. 28, 2022) (concluding that no-poach agreements that allocate the labor market are a type of horizontal restraint that court have long recognized as a per se Sherman Act violation).

The Government's decision to charge a per se violation of the Act has some consequences as to the propriety of evidence and argument both for the Government and the Defendants.

### B.    Pro-Competitive or Other Justifications

One consequence is that the so-called "rule of reason" does not apply to per se violations of the Sherman Act. *American Express*, 138 S. Ct. at 2284 ("Restraints that are not unreasonable *per se* are judged under the 'rule of reason'"). Thus, when there is a per se violation, "[w]hatever economic justification particular price-fixing agreements may be thought to have, the law does not permit an inquiry into their reasonableness. They are all banned because of their actual or potential threat to the central nervous system of the economy." *Ariz. v. Maricopa Cnty. Med. Soc.*, 457 U.S. 332, 351 n.23 (1982) (quoting *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 226 n. 59 (1940)); *United States v. Vega-Martínez*, 949 F.3d 43, 52 (1st Cir. 2020)

(noting that because the defendants had been charged with a per se violation of the Sherman Act "[d]etermining the defendants' liability for that conduct did not require the jury to assess its supposed reasonableness").  Here, the law is clear, and the Court concludes that the reasonableness of the Defendants' conduct in this case is not relevant to the issues before the jury.

### C.    The Defendants and Specific Intent

Another issue is whether, in the words of the Government, the Defendants should be allowed to "introduce evidence and argument that they acted with good intentions or did not intend anticompetitive results." *Def.'s Mot.* at 4.  Put differently, the question is whether a per se violation of § 1 of the Sherman Act is a specific intent crime.

Again, once the per se nature of the indictment is taken into account, the Government is not required under the law to demonstrate that the Defendants acted with the specific intent to violate the antitrust law.  In 1991, the Second Circuit explained:

> Where *per se* conduct is found, a finding of intent to conspire to commit the offense is sufficient; a requirement that intent go further and envision actual anti-competitive results would reopen the very questions of reasonableness which the *per se* rule is designed to avoid.

*United States v. Koppers Co.*, 652 F.2d 290, 296 n.6 (2d Cir. 1981); *accord United States v. Brown*, 936 F.2d 1042, 1046 (9th Cir. 1991); *United States v. W.F. Brinkley & Son Constr. Co.*, 783 F.2d 1157, 1162 (4th Cir. 1986) ("[T]he trial court correctly instructed the jury that the government must prove the defendants' intentional

13

participation in the conspiracy to rig bids.  The government did not have to prove the defendants' specific intent to unreasonably restrain trade").

### D.      The Defendants and Ignorance of the Law

Under First Circuit law, as is traditional, a defendant's ignorance of the law does not excuse its violation.  In *United States v. Nippon Paper Industries Co., Ltd.*, 109 F.3d 1, 7 (1st Cir. 1997), the First Circuit wrote that "the [*United States v.*] *Gypsum* [*Co.*, 438 U.S. 422, 440 (1978)] Court made it plain that intent need not be shown to prosecute criminally 'conduct regarded as *per se* illegal because of its unquestionably anticompetitive effects.'"  It is a short step to conclude that the Defendants here may not claim at trial their ignorance of the law vitiates their potential criminal liability.

### E.      The Defendants and Common Practice

The Government's final concern is that the Defendants not be allowed to argue that their conduct is justified because everyone in their industry engages in similar practices.  *Gov't's Mot.* at 4.  Of course, "it is no defense to participation in an illegal price fixing conspiracy to suggest that others did it too."  *United States v. Apple, Inc.*, 952 F. Supp. 2d 638, 699 (S.D.N.Y. 2013).  In their response, the Defendants do not suggest that they should be allowed to raise such an argument.  *See Defs.' Opp'n* at 1-9.

### F.      Final Observations

In carefully reviewing the Government's motion and the Defendants' response, the Court is not at all clear that the Defendants disagree with any of the

Government's points or the Court's conclusions here. *Id.* The Defendants emphasize their "right to a jury trial guaranteed by the Sixth Amendment to the United States Constitution," *id.* at 9, and the Court entirely agrees with the Defendants that they have that right and will seek to protect it. The Defendants also emphasize that the Government must prove that they entered into a conspiracy. *Id.* at 4-5. But none of the issues in this motion touches on that issue. The Court also notes another evidentiary consequence to both parties. As the Government has elected to proceed on a pro se violation basis, it is just as bound as the Defendants to hew to evidence strictly relevant to its theory of the case.

## V.   CONCLUSION

The Court GRANTS the Defendant's Motion in Limine to Exclude Evidence Irrelevant to a Per Se Conspiracy (ECF No. 155).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 27th day of February, 2023