UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:22-cr-00013-JAW |
| | ) | |
| FAYSAL KALAYAF MANAHE | ) | |
| YASER AALI | ) | |
| AMMAR ALKINANI, and | ) | |
| QUASIM SAESAH | ) | |
| Defendants. | ) | |

**ORDER ON THE GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE IRRELEVANT ANTITRUST LAW GUIDANCE**

In anticipation of trial, the Government files a motion in limine to bar Defendants from admitting a guidance document published by the United States Department of Justice's Antitrust Division arguing that it is irrelevant under Federal Rules of Evidence 401 and 402 and is likely to confuse the jury under Rule 403. Because the Defendants represent that they will not mention the Primer or ask any questions regarding it at trial without first raising the issue to the Court at sidebar, the Court dismisses without prejudice the Government's motion in limine.

## I.   BACKGROUND

### A.   Procedural Background

On January 27, 2022, a federal grand jury issued a one-count indictment, charging Faysal Kalayaf Manahe, Yaser Aali, Ammar Akinani, and Quasim Saesah with engaging in a criminal conspiracy in restraint of trade in violation of 15 U.S.C. § 1. *Indictment* (ECF No. 1) (*Indictment*). Trial is scheduled to commence on March 6, 2023 with jury selection to be followed immediately by trial. *Trial List* (ECF No.

151).  On March 2, 2023, the Government filed its motion in limine to exclude irrelevant antitrust law guidance.  *United Sates Mot. in Limine to Exclude Irrelevant Antitrust Law Guidance* (ECF No. 192) (*Gov't's Mot.*).  The Defendants' filed their response on March 3, 2023.  (ECF No. 200) (*Defs.' Opp'n*).

### B. The Alleged Conspiracy: An Overview

The indictment, consisting of nine pages, charges the Defendants and their respective home health agencies with engaging in a conspiracy to violate the Sherman Act, 15 U.S.C. § 1 by suppressing and eliminating competition for the services of Personal Support Specialist (PSS) workers through an agreement to fix the rates paid to PPS workers and through an agreement not to hire each other's workers.  *Indictment* ¶ 1-18.  In addition, the indictment alleges that home health agencies were eligible to apply for and did receive loans from the Small Business Administration's (SBA) Paycheck Protection Program (PPP).  *Id.* ¶ 4.  The PPP loans were forgivable so long as the loan recipients expended a certain percentage of the loans directly for payroll within a designated time and the indictment sets forth the managerial or ownership role the Defendants as well as other unnamed and unindicted individuals had in their respective home health agencies and the PPP loans each company (except the company affiliated with Quasim Saesah) received.  *Id.* ¶¶ 5-14.

## II. THE PARTIES' POSITIONS

### A. The Government's Motion

The Government submits that the document they seek to exclude—An Antitrust Primer for Federal Law Enforcement Personnel— is "[i]ntended to aid law enforcement agents investigating antitrust crimes," provides a "high-level overview of criminal antitrust law and describes the methods by which the Antitrust Division detects, investigates, and prosecutes such violations," and "is not a definitive legal interpretation of the elements of a Sherman Act violation." *Gov't's Mot.* at 1. The Government further submits that "[i]t is unclear how Defendants intend to use the guidance document at trial," but it "does not contain any factual matter that is probative of any matter in dispute in this case, and is consequently irrelevant." *Id.* at 1-2.

The Government contends that "[e]ven if the guidance document had some probative value in this case . . . that value is substantially outweighed by the risk of confusing the jury." *Id.* at 2. According to the Government, "[i]ntroducing the guidance document into evidence would blur this critical distinction," and because it is "full of assertions about the requirements of the Sherman Act," it would improperly invite the jury to 'find' the meaning of the law on its own." *Id.*

B.   **The Defendants' Response**

The Defendants respond that this "18 page primer . . . advises federal law enforcement . . . how to investigate *per se* conspiracies under § 1 of the Sherman Act," and "[t]his Court's jury instructions properly reflect the Primer's overview of the applicable law." *Defs.' Opp'n* at 1. The Defendants assert that they "do not intend to ask witnesses questions regarding the Primer unless the government 'opens the door'

3

on an issue," and they "will not mention the Primer or ask questions regarding the Primer without first bringing the issue to the Court at a side-bar." *Id.* at 1-2. They conclude that "[a]ccordingly, the government's Motion is moot and does not need to be decided by this Court." *Id.* at 2.

### III. DISCUSSION

"A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal rules. Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . ." *United States v. Abel*, 469 U.S. 45, 54 (1984). Federal Rule of Evidence 401 states that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." FED. R. EVID. 401. "Relevancy is a very low threshold." *United States v. Cruz-Ramos*, 987 F.3d 27, 42 (1st Cir. 2021). "'[T]he evidence need not definitively resolve a key issue in the case,' but rather 'need only move the inquiry forward to some degree.'" *Id.* (citing *Bielunas v. F/V Misty Dawn, Inc.*, 621 F.3d 72, 76 (1st Cir. 2010)). In the First Circuit's words, "it is no exaggeration to say that '[a] relevancy-based argument is usually a tough sell.'" *Id.* (citing *Bielunas*, 621 F.3d at 76) (alterations in *Cruz-Ramos*).

Relevant evidence is generally admissible, while "[i]rrelevant evidence is not admissible." FED. R. EVID. 402. However, "[t]he Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the

4

following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

Because the Defendants represent that they will not mention the Primer or ask any questions regarding the Primer without first raising the issue to the Court at sidebar, the Court need not make any pretrial determinations about the admissibility of the Primer as a whole or the admissibility of portions of the Primer. Preliminarily, however, the Court views it unlikely that the Primer would be admissible as a whole. It contains an overview of the Sherman Act, mentions the elements of a Sherman Act offense, describes other irrelevant conspiracies, such as the Lysine Conspiracy and the Citric Acid Conspiracy, and discusses other Sherman Act violations not before the jury. *See U.S. Depart. of Justice, An Antitrust Primer for Fed. Law Enforcement Personnel* at 1-17 (Revised Sept. 2003). The Court is disinclined to allow the wholesale admission of the Primer because the jury may favor the Primer over the Court's jury instructions, the Primer contains irrelevant material that is likely to cause jury confusion, and its probative value is obscure.

The Court appreciates and will enforce defense counsels' concession to approach the bench before referring to the Primer and it will address its admissibility at that time.

## IV.    CONCLUSION

The Court DISMISSES without prejudice the Government's Motion in Limine to Exclude Irrelevant Antitrust Law Guidance (ECF No. 192).

SO ORDERED.

                                                <u>/s/ John A. Woodcock, Jr.</u>
                                                JOHN A. WOODCOCK, JR.
                                                UNITED STATES DISTRICT JUDGE

Dated this 5th day of March, 2023